We move to the fifth case this morning, United States v. Desotell. Good morning, your honors. I'm Tyler Fredrickson. I'm here with my colleague, John Miller Carroll. We represent the appellant, Jimmy Desotell. We're here because the defendant, we're here because we want to challenge the court's order entered by the district court denying the motion for suppression. We challenge the district court's finding a probable cause pertaining to the bags that were identified as Desotell's and outside of the vehicle at the time of search. This occurred some five to six hours after another suspect who was positively identified by investigating officers by the security company at Kohl's as being involved in a retail fraud. Counsel, your main problem here is that you didn't reserve the right to appeal that in the plea agreement. Why don't you talk about that? Your honor, I'll move right to the waiver argument. I think it's really important and I think I addressed it substantially in the response that the court looked to. You didn't mention it in your opening brief. I did not mention it in the opening brief, if you're correct, your honor, because I wanted the court to focus on the search issue. Well, of course you wanted the court to focus on that, but what we're going to focus on is a waiver. I anticipated that, your honors. Um, I think what's really important is to look at the voluntariness of the waiver itself. Jimmy Desotell was a defendant who was initially being investigated by a local mag unit concerning, um, accidental discovery of a firearm and a large quantity of methamphetamine. Um, he immediately debriefed with investigating, um, officers under the guise that he would be offered lesser charges or for referral. He was actually told in his, um, initial debriefing that they would be looking into a possibility of bail jumping charges. And he conveyed at that point in time to investigator his, um, vulnerability-ness or vulnerableness in that his father was dying of cancer and he wanted to work with and facilitate the mag unit, the, the, um, narcotics investigation unit in, um, essentially locating a higher people up in the conspiracy than himself. So we have a defendant who initially debriefs facilitating a government, um, investigation into a honest under a false guise bail jumping and state charges who ended up ultimately after he debriefs for quite a lengthy period of time, I believe it was over an hour in this case, giving them, um, intimate details that led to ultimately indictments and convictions of other people, um, where he's relying on the statements that the officers are essentially conveying. At this point in time, he received our, he was appointed counsel through the public defender's who analyzed the case to the Houghton case, which the court ultimately determined was governing in this case. I, I urged the court to look to the distinguishments under this search compared to Houghton, um, and the voluntariness of his actual waiver. I think that one of the most important things that the court can look at in this case is that the immediate plea negotiations surrounding the proffer in the case. So what happened is his defender essentially reached out to the prosecutor and said, are they were able to reach an agreement where the defendant would proffer and in exchange for proffering, the government would forego filing enhancements on the underlying charges, essentially adding five years to the mandatory minimum in his case. Um, what's important about that initial, uh, the initial agreement that was reached between the parties is that it did not, it was silent as to so in reliance on the agreement that his attorney was able to strike with the state, he proffered, he gave up all of his bargaining chips. He conveyed useful information to the government, which was subsequently used in prosecuting. And then in turn, the government turned around and said when he filed this motion that they were no longer going to honor the plea agreement. Um, again, the agreement that was struck was silent as to motions, pretrial motions, challenging constitutionality of the search or seizure and silent as to the appellate waiver. Why I think all of this is relevant is because after we went forward with the motion or when, when we began to go forward with the motion, the government then filed the subsequent enhancers carrying an additional five year mandatory minimum. This we saw as a breach of the plea agreement from the government side because DeSotel has already detrimentally relied upon the plea that was made to him. Essentially, he's given up all of his bargaining chips in exchange for the agreement and the government subsequently added additional terms to the agreement and then threatened him with a life sentence in open court or additional five years of a mandatory sentence if he did not timely enter a plea at that point in time. So I'd like to urge the court to look at the circumstances surrounded the circuit bar. So you have, you've tendered and we can see the original plea agreement. I believe so, your honor. It should be in the record. It was part of the defendant's motion to enforce plea agreement that was filed with the district court. And I think that that adds credence to the argument here today because after we filed the motion to enforce plea agreement, negotiations went back to where they had been prior. So essentially the government came off of the subsequently charged enhancer carrying the five year mandatory minimum. But when we went to the plea hearing, the government added an additional term to the plea agreement requiring a waiver of appellate rights. If you look at the testimony of Mr. Carroll at the actual sentencing hearing, he takes issue with the voluntary nature of the plea or the waiver itself and says that essentially this isn't voluntary and he's doing it just to avoid future implications being added to a contract which he's already detrimentally relied on. Who was that argument made to? The district court? Yes, your honor. It was made to Chief Judge Griesbach. So I think that the circumstances surrounding the waiver implicate that it isn't exactly voluntary, that there's some duress involved. And I think that when you look to the greater scope of all the details involved in the investigation, his timely cooperation with, at that point in time, state level investigators to ultimately implicate other members of the conspiracy while seeking. So you're indicating to us that the district court knew of these, what you claim are, a situation where he did not do it Your honor, there was, and the district court actually... Why did he say in open court he did it? He addressed that subsequently. So what happened at the plea hearing is that Attorney Carroll made a statement concerning what had all occurred in the prior negotiations with prior counsel, how the agreement was silent as to motions and to appeals, and essentially just argued that this is the product. He's only pleaing in this circumstance because the government is only offering a plea agreement with a waiver of appellate rights, even though this is different from what they originally offered, and he detrimentally relied upon, your honor. And that's what he agreed to, right? At that point in time, he, yes, he entered a plea. But he also agreed to the waiver. I do believe that. And the district court was extensive in discussing it with him. Yes, I do have a different charging mechanism. I don't see... He wanted to enforce the original agreement as anticipated and understood by all the parties, and the only means by which he could do that is a motion to enforce plea agreement in the district court or an appeal. The prosecutor that we were dealing with had threatened to file the enhancement in violation of the plea agreement, and actually did, after we didn't plea that day. So the only way that he could have obtained the consideration under the initial plea agreement was by entering a plea to the charge because the government had to consent to the preservation of appellate rights, your honor. And we'll find this in the record, then, won't we? What's that? What you just described to me? What the prosecutor did? Yes, there should be an email that was before the district court concerning the negotiations between attorney Donovan. An email? An email, yes, concerning the status of negotiations between prior counsel Donovan. Not a filing with the court? A plea agreement that was filed? I said an email, not a filing with the court. No, it was filed as an exhibit to a motion to enforce plea agreement, your honor. I have to tell you, I have a very difficult time understanding what you're trying to tell me. I'm trying to tell you that the waiver of appellate rights was only given under duress because he was directly threatened with a five-year enhancement that was in disagreement with the prior negotiations and the agreements in the party that he detrimentally relied on. And that was signed by both parties, a prior agreement, was it? It was not signed by both parties, no. Then it wasn't an agreement. I believe it was an agreement because he was threatened with a five-year enhancement. I see I'm out of time here. Is there any other questions? No. Thank you. May I please the court, Rebecca Tableson, the United States of America. The record is clear that Jimmy DeCitel knowingly and explicitly waived his right to appeal the district court's denial of his motion to suppress. That should be the beginning and the end of this appeal. I'm going to address now the allegations in the reply brief and counsel's comments today. Counsel's suggesting that the government in some way handled DeCitel's case inappropriately. The record does not support that claim, nor does it support the specific details alleged in the reply brief and in argument today. What happened here is simple. Mr. DeCitel was initially in a plea posture with his first attorney who was appointed through the Public Defender's Office. That attorney, Mr. DeCitel, cooperated and that attorney worked with the prosecutor discussing a potential plea agreement that was not yet signed. DeCitel then privately retained new counsel, current counsel. Through that counsel, he filed a motion to suppress and he missed the deadline to agree to the plea agreement that had previously been contemplated between the parties. At that point, DeCitel was in a trial posture. In anticipation of trial, the government filed an information that noted DeCitel's prior felony conviction for a drug charge. That information had the potential to increase the statutory mandatory minimum for the charges that DeCitel faced. The district court ultimately denied DeCitel's motion to suppress. At that point, DeCitel indicated his renewed interest in pleading guilty. So the government entered into the very same plea agreement that had originally been contemplated with DeCitel's first attorney and it agreed to dismiss the information that it had filed when DeCitel was in a trial posture. Did that include a waiver of an appeal? No, Your Honor. Let me take a moment to clarify something. So some plea agreements, not most, have what is called an appeal waiver, which is sort of a term of art. It refers to a specific paragraph in a plea agreement that, at least in our district, begins, based on the government's concessions in this case, comma, the defendant hereby agrees not to appeal his sentence or to bring post conviction motions that he would otherwise be entitled to bring, not withstanding his guilty plea. There was not an appeal waiver in this plea agreement, nor in the one that was originally contemplated between the first defense attorney and the prosecutor. That appeal waiver talks about things that the defendant would be entitled to appeal, not withstanding his guilty plea, unless he contractually waived those rights in his agreement. What we're talking about here, though, is a separate thing. That is the defendant's right to appeal a pretrial resolution of a motion to suppress. The law is clear that a guilty plea inherently waives that right, because, in the words of the Supreme Court, the guilty plea, quote, renders irrelevant the defendant's challenge to evidence that the government would have presented at trial. Now, it just so happens that in the Eastern District of Wisconsin, every plea agreement also explicitly notes that fact. The language is the same in any claims he may have raised in any pretrial motion. You can see that at record 195 at 9. That is the filed plea agreement in this case. You can also see that exact same language at record 184-6 at 9. That is DeSotel's motion to enforce the prior plea agreement that had been discussed but never executed. So that language is always there. The other places I just, for the courts, in case it helps the court, the other places on the record to look to sort of see the chronology of events as quickly as possible, record 159 and attachments. That is the government's most comprehensive submission about these events. Record 184 and attachments. That is the defendant's most comprehensive submission about these events. And record 194 memorializes sort of the resolution of these events. So that's what the record tells us. Ultimately, though, this is all beside the point because even if that language had been omitted, the result would be the same here. The guilty plea, by its very nature, waives these claims. Based on that case law and the facts here, Mr. DeSotel cannot now appeal the district court's denial of his motion to suppress. We respectfully request that you affirm the decision below. If there are no further questions, thank you, Your Honors. Wait, wait, wait. You mean by pleading guilty, he waives the right to appeal? I don't understand what you're saying. Oh. So under cases from this court and the Supreme Court, when a defendant enters a guilty plea, it, by its very nature, renders irrelevant, that's the language from the Supreme Court case, pretrial issues. Not issues like sentencing or a post-conviction motion, but pretrial issues such as a motion to suppress evidence under the Fourth Amendment. And that makes sense if you The motion to suppress evidence concerns the legitimacy of evidence that the government would have presented at trial. But when a defendant like DeSotel pleads guilty, factually admitting that he committed the crime, the manner or means through which the government obtained the evidence it would have presented at trial are no longer significant to the case. And so as recently as 2018, the Supreme Court restated this rule in class versus United States. And this court has stated the rule in numerous decisions cited in the brief. And so that rule is really undisputed here. And that's the rule that Judge Griesbach was so careful to tell Mr. DeSotel about at his change of plea hearing. And that's the rule that Judge Griesbach explicitly got Mr. DeSotel to sort of affirm his understanding of. Is that helpful, Judge Griesbach? In achieving the plea agreement? Yeah. And I think, Your Honor, because the guilty plea in and of itself renders these claims irrelevant, what DeSotel, I suppose, would have to be arguing here is that his guilty plea itself was involuntary. And there's no argument here, nor any basis in the record for such an argument. And as I hope I've explained, the record is also crystal clear that nothing about the negotiations concerning the plea agreement was inappropriate. And at the end of the day, Mr. DeSotel really did get the exact plea agreement that he wanted. And that plea agreement included the precise language that he's ignoring today. Thank you, Your Honors. Counsel, I'll give you two minutes to try to explain your position. Thank you, Your Honor. I think it ties in best with the class decision and the argument of the state. There were three cases that were cited in the class decision that left open... By the way, this isn't the state, this is the government. I'm sorry, the government, the US, that left open the door to invalidating waivers in certain circumstances. And I think the court started to hint at that when the government was up here. Those circumstances are where either double jeopardy is involved or there's vindictive prosecution. I believe that the conduct of the government, after eliciting a plea in exchange for a 10 year agreement that was silent as to appellate waivers or motions, and then subsequently exercising the ability to file an enhancement after he had already given up all of his, essentially, chips in negotiating, was vindictive in this case. That the sole reason that the prosecutor in this case filed the enhancement was in retaliation for him filing a motion concerning the constitutionality of the search. The problem is, initially, you didn't include it in your opening brief. That's correct, Your Honor. You know what that means, do you? You waive it. Anything else? Nothing further. The case will be taken under advisement.